IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TRICIA R.,                                )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )        CASE NO. 2:25-cv-373-JTA
                                          )        (WO)
FRANK BISIGNANO, Commissioner of          )
Social Security,                          )
                                          )
          Defendant.                      )

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tricia R. brings this action to review a final

decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The

Commissioner denied Plaintiff's application for a period of disability and Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court

construes Plaintiff's brief in support of her Complaint (Doc. No. 11) as a motion for

summary judgment and the Commissioner's brief in opposition to the Complaint as a

motion for summary judgment (Doc. No. 21).[2]

After scrutiny of the record and the motions submitted by the parties, the Court finds

Plaintiff's motion for summary judgment is due to be GRANTED, the Commissioner's

motion for summary judgment is due to be DENIED, the Commissioner's decision is due

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

[2] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge
pursuant to 28 U.S.C. § 636(c). (Docs. No. 4, 5.)

to be REVERSED, and this matter is due to be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND AND FACTS[3]

Plaintiff is an adult female[4] with at least a high school education and past relevant work as an automotive painter helper and a motor vehicle assembler. (R. 35.) She alleged a disability onset date of October 8, 2021, due to degenerative disc disease, foraminal stenosis in her neck, degeneration in bilateral shoulders, headaches, hypertension, hyperlipidemia, pain that radiates down from her hips to her knees, numbness and tingling in her right arm, a burning sensation in her left arm, pain and swelling in both feet, cervical spondylosis, lumbar spondylosis, facet joint arthropathy, osteoarthritis of the cervical spine, lumbar degenerative disc disease, osteoarthritis of the bilateral acromioclavicular joint, obesity, depression, and insomnia. (R. 29, 172–73, 192, 205, 317, 331.)

In May 2022, Plaintiff protectively filed an application for SSI and for a period of disability and DIB under Titles II and XVI of the Social Security Act. (R. 297–301.) Her claim was denied initially and upon reconsideration. Following an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. (R. 1–7, 24–41, 203–222.) The hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

---

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 10.)

[4] Plaintiff was 52 years old on her alleged onset date. (R. 35.)

On May 15, 2025, Plaintiff filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g).[5] *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) ("In Social Security appeals, we must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004))). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (citation modified). The court "will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).[6] However, the court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see*

---

[5] Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

[6] The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner (or the ALJ) incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

*Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." (quotation and brackets omitted)). "[T]he Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed de novo." *Fleeton v. O'Malley*, No. 2:23-cv-62-JTA, 2024 WL 235216, at *1 (M.D. Ala. Jan. 22, 2024) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007)).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for disability must prove that she is disabled. *See* 20 C.F.R. §§ 404.1505, 416.920(a)(4).[7] The Act defines "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 405.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. The ALJ must determine (1) whether Plaintiff is currently performing substantial gainful activity; (2) whether Plaintiff has a severe impairment or combination of impairments; (3) whether the severe impairment meets or exceeds an impairment in the Listings of Impairments; (4) whether the Plaintiff can perform her past relevant work despite the impairment; and (5) whether Plaintiff can perform other jobs that exist in the

---

[7] Although DIB and SSI are separate programs, the standards for determining disability are identical. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

national economy[8] given her residual functional capacity ("RFC"), age, education, and work experience. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101–02 (11th Cir. 2021).[9] Plaintiff has the burden of proof on the first four steps and the Commissioner carries the burden on the fifth step. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020). If the Commissioner carries the burden at the fifth step, the burden shifts back to Plaintiff to prove she is unable to perform the jobs suggested. *Id*.

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026, and had not engaged in substantial gainful activity since October 8, 2021, the alleged onset date. (R. 29.) The ALJ determined Plaintiff suffers from the following severe impairments that significantly limit her ability to perform basic work activities: cervical spondylosis, lumbar spondylosis, facet joint arthropathy, osteoarthritis of the cervical spine, lumbar degenerative disc disease, osteoarthritis of the bilateral acromioclavicular joint, and obesity. (R. 29.) The ALJ also determined Plaintiff had the non-severe impairments of hypertension and hyperlipidemia. (*Id*.)

The ALJ concluded Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.

---

[8] To determine the existence of other jobs the claimant can perform, the ALJ may rely on the testimony of a vocational expert ("VE"). *Winschel*, 631 F.3d at 1180.

[9] *Simon* was superseded on other grounds by 2017 regulations abrogating the treating physician rule. *See Harner v. Soc. Sec. Admin., Comm'r,* 38 F.4th 892, 894 (11th Cir. 2022).

30.) The ALJ also concluded Plaintiff retains the RFC to perform light work as defined in

20 C.F.R. §§ 404.1567(b) and 416.967(b),[10] with certain restrictions:

> frequent climbing of ramps and stairs, but no more than occasional climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, and crouching; and frequent crawling. The claimant is limited to no more than occasional overhead reaching bilaterally and frequent reaching in front and laterally to each side bilaterally. The claimant should avoid all exposure to workplace hazards such as dangerous moving machinery and unprotected heights.

(R. 30.)

Based upon the VE's testimony, the ALJ determined Plaintiff could not perform her

past work, but an individual with Plaintiff's age, education, work experience, and RFC

could work as a cashier II, sales attendant, and routing clerk. (R. 35–37.) The ALJ found

that based upon Plaintiff's age, education, work experience, and RFC, Plaintiff can make

a successful adjustment to other work that exists in significant numbers in the national

economy. (R. 37.) Based on the foregoing, the ALJ concluded Plaintiff had not been

disabled from the alleged onset date through the date of the hearing decision and was not

disabled under the Social Security Act. (*Id.*)

## V.    DISCUSSION

Plaintiff presents four issues in this appeal:

1.    Whether the ALJ failed to comply with 20 C.F.R. § 1520c by failing to articulate how persuasive the ALJ found medical opinions by Dr. Grantier[11]

---

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of an arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

[11] Dr. Grantier evaluated Plaintiff on October 21, 2021 (approximately three weeks after her workplace injury) and concluded she could return to work with the following restrictions: no lifting

and Dr. Law.[12]

2.      Whether the ALJ committed reversible error by declining to adopt limitations in a medical opinion without providing a clear explanation for her decision.

3.      Whether the ALJ's RFC was based on substantial evidence.

4.      Whether the Appeals Council failed to properly consider new evidence Plaintiff presented to it.

(*See* Doc. No. 11.) The Court has considered these issues and finds the second issue warrants remand.[13]

The second issue concerns the adequacy of the ALJ's explanation for her evaluation of a medical opinion about Plaintiff's ability to move her neck. On April 12, 2022, approximately six months after suffering a workplace injury,[14] Plaintiff underwent a functional capacity evaluation ("FCE) prepared by Laine Villarreal, PT, DPT and Tony Bridges, MS, CSCS, CDE, CEES for Drs. Daniel Kim and Dewey H. Jones. (R. 710.) On April 19, 2022, Dr. Jones reviewed the FCE, completed a work-related restriction form,[15]

---

over 10 pounds, no pushing, pulling, squatting, crouching, bending, stooping, or use of vibrating hand tools. (R. 460).

[12] Dr. Law prescribed Plaintiff a walking cane. (R. 315.)

[13] Because the second issue warrants remand, the Court pretermits discussion of the remaining issues.

[14] Plaintiff filed for disability benefits after suffering a workplace injury. (R. 302, 306.) Her employer settled her workers' compensation claim for $100,000.00, which was intended to compensate her for permanent loss of working capacity. (*Id.* at 302–03.) At the hearing before the ALJ, Plaintiff testified that the workplace incident injured her neck, back, and shoulders, and aggravated a previous neck injury. (R. 165.) The date of the workplace injury—October 8, 2021—coincides with the onset date of Plaintiff's alleged disability. (R. 303.)

[15] There is no dispute that Dr. Jones completed the April 19, 2022 work-related restriction form, and it appears to bear his signature. (Doc. No. 11 at 4; R. 602.) In actuality, over the course of

and evaluated Plaintiff as a follow-up to her worker's compensation claim. (R. 602, 604, 176.) In the work restriction evaluation, Dr. Jones adopted the findings of the April 12, 2022 FCE with the following added limitations: occasional neck flexion, occasional neck extension, and occasional neck rotation. (R. 602, 711.) In his notes, Dr. Jones stated the April 12, 2022 FCE "basically plac[es] the patient in the medium category of work, and I would opin[e] that she the [sic] should be made as permanent work restrictions for the employee." (R. 604.)

The ALJ made the following findings regarding Dr. Jones's evaluation:

> The opinion provided by Dr. Jones is found to be persuasive but only to the extent i[t] supports the residual functional capacity (7F/75)[16]. Dr. Jones deferred to the functional capacity evaluation, outlining "multiple work restrictions basically placing the patient in the medium category of work. I would opined [sic] that she the [sic] should be made as permanent work restrictions for the employee" (7F/75). The undersigned agrees that the claimant is limited in the ability to perform basic work activities; however,

---

Plaintiff's recovery from her workplace injury, medical providers completed several work-related restriction forms, which are in the record. (*See, e.g.*, R. 459–60, 470, 490.) The April 19, 2022 work-related restriction form is the only one at issue here, and it reflects Dr. Jones's opinion of Plaintiff's work restrictions at the point of maximum medical improvement ("MMI") from the workplace injury. (R. 602 ("Patient has reached [MMI] as of 3/23/22.").) In the context of Alabama workers' compensation law, MMI represents the point at which "the employee has recovered as much as medically possible from the [workplace injury] such that the extent of permanent disability, if any, can be estimated," and "there is no further medical care or treatment that could be reasonably anticipated to lessen the claimant's disability." *Ex parte Phenix Rental Ctr.*, 873 So. 2d 226, 229 (Ala. 2003) (citations and internal quotation marks omitted). In this opinion, the court refers exclusively to the April 19, 2022 work-related restriction form, because it is the only one germane to the issues.

[16] Exhibit 7F/75 (R. 176) consists of Dr. Jones's treatment notes from his April 19, 2022 evaluation of Plaintiff. Exhibit 7F/75 is not the same document as the April 19, 2022 work-related restriction form (R. 602 (Exhibit 4F/150) in which Dr. Jones noted Plaintiff's work-related restrictions at the point of MMI, including additional restrictions on neck movement. The work-related restriction form is the document Plaintiff contends conflicts with the ALJ's RFC findings. Neither the ALJ's opinion nor the Commissioner's briefs before this court specifically acknowledge or discuss the Dr. Jones's work-related restriction form as it relates to the RFC.

8

the undersigned finds the claimant somewhat more limited than the functional capacity evaluation and Dr. Jones. The undersigned, though, agrees with Dr. Jones's deferment to the functional capacity assessment that the claimant can no more than occasionally kneel, and that the claimant can occasionally climb ladders, ropes, and scaffolds. Furthermore, the opinion is mostly consistent with the evidence of record, namely the imaging showing no more than mildly abnormal findings. As such, the undersigned finds this assessment persuasive to the extent it supports the residual functional capacity.

(R. 35.)

The ALJ's RFC does not contain any limitations on Plaintiff's ability to flex, extend, or rotate her neck – actions Dr. Jones found Plaintiff could perform only occasionally. Plaintiff argues the ALJ erred as a matter of law by failing to explain why the RFC omits the neck movement limitations from Dr. Jones's work-related restriction form. In response, the Commissioner ignores the work-related restriction form and its potential importance. Instead, the Commissioner argues the ALJ properly discussed Dr. Jones's separate treatment notes and the evidence of record, as a whole, substantially supports the ALJ's RFC.

The Commissioner misses the point. The questions before the Court at this juncture are not whether the ALJ properly analyzed the findings in Dr. Jones's treatment notes or whether the ALJ's opinion is supported by substantial evidence. The questions before the Court are (1) whether the ALJ erred as a matter of law by not adequately explaining why the RFC omitted the neck movement limitations from Dr. Jones's work-related restriction form and (2) if so, whether that error is harmless or reversible. The Court will address those two questions in turn.

9

A.    The Commissioner Erred By Declining to Adopt Neck Limitations In Dr. Jones's Medical Opinion Without Providing A Clear Explanation

The ultimate responsibility for determining Plaintiff's RFC lies with the ALJ. 20 C.F.R. § 416.946(c); 20 C.F.R.§ 416.946(c). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision," but the ALJ's decision must contain adequate explanation for the Court to determine whether her opinion is supported by substantial evidence, considering Plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Yet, in determining a claimant's RFC, the "ALJ 'must consider and address'" one particular type of evidence: medical opinions. *Wheeler v. Comm'r of Soc. Sec.*, No. 22-14251, 2024 WL 4603298, at \*4 (11th Cir. Oct. 29, 2024) (quoting SSR 96-8p, 1996 WL 374184, at \*7 (July 2, 1996)[17]). As opposed to other categories of evidence, medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1); 20 C.F.R. § 416.913(a)(2).

An ALJ is not required "'to adopt into an RFC every part of a medical opinion that the ALJ found persuasive." *Tara W. v. Comm'r, Soc. Sec. Admin.*, No. 1:24-cv-5316-MLB,

---

[17] "Social security rulings are binding on the [Commissioner]. While they do not bind" the reviewing court, the court "afford[s] them deference." *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, at \*2 (11th Cir. Nov. 20, 2023) (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 n.12 (11th Cir. 2020)); *see also Wheeler*, 2024 WL 4603298, at \*4 (holding that, by inadequately explaining why the RFC failed to account for a medical opinion the ALJ found persuasive, the ALJ failed to comply with  SSR 96-8p).

2026 WL 1097551, at *2 (N.D. Ga. Mar. 18, 2026) (emphasis omitted) (quoting *S.S. v. Comm'r, SSA*, 2025 WL 3560297, at *7 (N.D. Ga. Nov. 13, 2025)). Nor is the ALJ "'required to address every limitation identified by a medical source.'" *Id.* (quoting *Courtney G. v. Comm'r, SSA*, 2023 WL 2297453, at *3 (N.D. Ga. Feb. 28, 2023)). Still, "when the ALJ's residual functional capacity assessment 'conflicts with an opinion from a medical source,' she must 'explain why the opinion was not adopted.'" *Id.* (quoting SSR 96-8p, at * 7); *see also Weidlich*, 2023 WL 8015753, at *2 (11th Cir. Nov. 20, 2023) ("Social Security Ruling 96-8p (SSR 96-8p) provides that the ALJ must explain and address any conflicts between the RFC and medical opinions."). In explaining the conflict, the ALJ is required to evaluate the medical opinion's persuasiveness and specifically address the supportability[18] and consistency[19] of the medical opinion.[20] *Rich v. Comm'r, Soc. Sec. Admin.*, No. 23-12796, 2024 WL 3634230, at *4 (11th Cir. Aug. 2, 2024); *Tara W.*, 2026 WL 1097551, at *2 (citing 20 C.F.R. § 416.920(c)(b)(2)).

When an inadequate explanation leaves a court unable to assess whether the ALJ's opinion is supported by substantial evidence, the reviewing court is not allowed to construct *post hoc* rationalizations to resolve the conflict. *Lowery v. Acting Comm'r, Soc.*

---

[18] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive" the ALJ will find medical opinions to be. 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).

[19] "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the ALJ will find medical opinions to be. 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

[20] The ALJ may, but is not required, to discuss factors other than supportability in explaining her consideration of medical opinions. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

*Sec. Admin.*, No. 22-13913, 2024 WL 890133, at *4 (11th Cir. Mar. 1, 2024); *Rich*, 2024 WL 3634230, at *2 ("We may not 'decide the facts anew, make credibility determinations, or re-weigh the evidence.'" (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015))). Instead, the case must be remanded for further development. *See Weidlich*, 2023 WL 8015753, at *3 (reversing and remanding an ALJ's decision on grounds that, despite a "potential rationale" to support the ALJ's opinion, "the absence of a clear explanation renders the ALJ's RFC assessment unsupported by substantial evidence"); *Tara W.*, 2026 WL 1097551, at *2 (concluding the ALJ's failure to adequately resolve conflicts between the RFC and medical opinions constituted reversible error because "the Court cannot now unwind the decision and rationalize why the ALJ rejected the opinions").

Dr. Jones's April 19, 2022 work-related restriction form is a medical opinion,[21] so the ALJ was required to  adequately explain any conflict between it and the RFC. Here, there are conflicts begging an explanation. First, the RFC accounts for no limitations on Plaintiff's ability to move her neck, despite the ALJ's determination that Plaintiff has severe impairments of her cervical spine, and despite Dr. Jones's opinion that those impairments affected Plaintiff's work-related capabilities. (R. 29–30.) Of course, mere

---

[21] The parties do not dispute that Dr. Jones is an acceptable medical source offering a medical opinion. *See* 20 C.F.R. § 404.1527(a)(2) (stating that treating physicians are generally considered an acceptable medical source); 20 C.F.R. § 416.927(a)(2) (same); *Tara W. v. Comm'r, Soc. Sec. Admin.*, No. 1:24-cv-5316-MLB, 2026 WL 1097551, at *3 (N.D. Ga. Mar. 18, 2026) ("The Court assumes Dr. Walsh and Dr. Kelly were medical sources offering medical opinions because no one argues (or has ever argued) otherwise and their opinions could reasonably be construed as 'statement[s] from a medical source about what [Plaintiff] can still do despite [her] impairment[s].'" (quoting *Rich*, 2024 WL 3634230, at *3 (citing in turn 20 C.F.R. § 404.1513(a)(2)))).

failure to discuss a particular restriction in a medical opinion or to include the restriction in the RFC does not, in and of itself, necessarily create a conflict that requires an explanation.[22] In this situation, however, there exists an inherent discrepancy among the ALJ's discussion, the RFC, and Dr. Jones's work-related restriction form.

In addressing why the ALJ found "[t]he opinion provided by Dr. Jones . . . persuasive but only to the extent is supports the residual functional capacity," the ALJ explained that the RFC diverged from Dr. Jones's opinion because the RFC was "somewhat *more* limit[ing]" than Dr. Jones's opinion. (R. 35 (emphasis added).) Yet, by omitting Dr. Jones's neck movement limitations, the RFC was in fact somewhat *less* limiting than Dr. Jones's opinion. The ALJ's statement that Dr. Jones's "opinion is mostly *consistent* with the evidence of record, namely the imaging showing no more than mildly abnormal findings" does nothing to resolve the conflict. (R. 35 (emphasis added).) That illuminates why the ALJ found persuasive Dr. Jones's discussion of the April 12, 2022 FCE. (*Id.*) It does not explain whether any of Dr. Jones's medical opinions (including his opinion about neck movement) might have been disregarded as *inconsistent* with or unsupported by the medical record, or for any other reason. In fact, in discussing the weight afforded Dr. Jones's opinion, the ALJ only mentioned Dr. Jones's discussion of the April 12, 2022 FCE in his treatment notes, but neither acknowledged nor discussed the

---

[22] *See Tara W.*, WL 1097551, at *2; *Deborah S. v. Bisignano*, No. 3:25-cv-403-KFP, 2026 WL 782290, at *5 (M.D. Ala. Mar. 19, 2026) ("Merely leaving out one of the recommendations in an opinion does not create a conflict by default."); *see also Klarner v. Comm'r of Soc. Sec.*, No. 24-11613, 2025 WL 1753548, at *14 & n.19 (11th Cir. June 25, 2025) (holding that omitting a specific restriction from a medical opinion did not create an unresolved conflict because the ALJ's RFC was nevertheless consistent with the medical opinion).

consistency or supportability of the work-related restriction form or its added limitations.

In short, the internal inconsistency between the RFC and Dr. Jones's opinion creates a discrepancy the ALJ failed to adequately explain. The lack of any discussion of the neck movement restrictions in the hearing decision leaves the conundrum unresolved. The Court cannot determine whether the ALJ wholly overlooked Dr. Jones's work restriction evaluation, or whether the ALJ merely neglected to acknowledge or explain why the RFC was less restrictive than Dr. Jones's opinion when it came to Plaintiff's ability to move her neck. Without accepting the Commissioner's invitation to engage in *post hoc* rationalizations,[23] there is no way to determine why the ALJ omitted neck movement restrictions from the RFC or whether the ALJ's reasons for doing so are supported by substantial evidence. *See Stewart v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 851, 856 (11th Cir. 2018) ("While there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, without clearly articulated grounds for . . . rejection" of a physician's opinion, "we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."). In sum, the ALJ erred as a matter of law by failing to adequately explain the conflict between the RFC and Dr. Jones's

---

[23] Despite the unexplained conflicts in the ALJ's opinion, the Commissioner argues the evidence as a whole supports the RFC. That argument amounts to an invitation to weigh the evidence and construct a post-hoc rationalization to support the RFC. It is not the Court's task to justify the ALJ's findings after the fact; the ALJ must provide adequate explanation to facilitate the Court's review. *See Winschel*, 631 F.3d at 1179 (explaining that, when the ALJ fails to adequately articulate the basis for rejecting a medical opinion, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citation modified)); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making.").

medical opinion.

B.     The Commissioner's Error Was Not Harmless and Warrants Reversal

"To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015). Harmless error does not warrant reversal. *See id.* For two independent reasons, the Court declines to find the ALJ's error harmless. First, the Commissioner does not argue the error is harmless.[24] Second, the administrative record is inadequate to allow an assessment of the harmlessness of the error. *See Lowery*, at, at *4 ("Assuming that the harmless error doctrine applies in these circumstances, we conclude that a remand is required" for two reasons: first, that "the Commissioner waived any harmless error argument by failing to present it in her submission to this Court," and, second, because the record did not allow for a conclusion that the ALJ's errors were harmless).

Though the burden of arguing and demonstrating harmlessness is generally on the claimant,[25] it is the Commissioner's duty to develop a full and fair record adequate to

---

[24] The Commissioner does not expressly argue the ALJ's error is harmless. The Commissioner invites the Court to affirm by retroactively determining that, aside from any deficiency in the discussion of Dr. Jones's medical opinion, the evidence as a whole substantially supports the ALJ's RFC determination. That argument cannot be properly construed as a harmlessness argument because it fails to address whether the ALJ's error affected the outcome of the ALJ's disability determination. *See Wheeler*, 2024 WL 4603298, at *4 ("[W]e may not affirm on the basis that the Commissioner has now put forth a rationale that could support the ALJ's decision. Instead, we are limited to reviewing the reasoning in the ALJ's decision." (citing *Owens*, 748 F.2d at 1516)).

[25] *Thornton v. Colvin*, No. 2:13-cv-674-WC, 2014 WL 5419329, at *6 (M.D. Ala. Oct. 23, 2014) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

support the administrative decision.[26] Where the record is not adequately developed to permit meaningful assessment of whether the ALJ's error is harmless, remand is appropriate. *See Lowery*, 2024 WL 890133, at * 4 ("[R]eviewing courts will not affirm on harmless error grounds where an insufficient record precludes a determination that substantial evidence supports the ALJ's denial of benefits." (citation modified)); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have . . . declined to remand for express findings when doing so would be a wasteful corrective exercise *in light of the evidence of record* and when no further findings could be made that would alter the ALJ's decision." (emphasis added; citation and quotation marks omitted)).

Record evidence demonstrates harmlessness only if it affirmatively shows that, absent the ALJ's error, the administrative outcome would have been the same. *Stewart*, 746 F. App'x at 852 ("An incorrect application of regulations results in harmless error when the correct application would not contradict the ALJ's ultimate findings and [her] decision would stand."); *see, e.g., Amber H. v. Dudek*, No. 2:24-cv-115-JTA, 2025 WL 777710, at *5 (M.D. Ala. Mar. 11, 2025) (finding harmless an ALJ's lack of explanation for omitting a physician's recommended limitation where the record, as developed, affirmatively demonstrated the omitted limitation still would not preclude the plaintiff from performing a significant number of jobs in the national economy); *Sharon D. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-cv-2520-MLB, 2024 WL 4649132, at *2 (N.D. Ga. Sept. 26,

---

[26] *See Rich*, at *2–*3 (11th Cir. Aug. 2, 2024) (noting the ALJ's responsibility "to develop a full and fair record").

2024) ("[T]he Court cannot say the ALJ's error was harmless because "[t]he administrative record does not clearly demonstrate" it was (quoting *Lowery*, 2024 WL 890133, at \*4)); *Hester v. Kijakazi*, No. 3:23-cv-51-ECM-KFP, 2023 WL 9231653, at \*4 (M.D. Ala. Dec. 4, 2023) (finding reversible error because it was unclear what impact the ALJ's error "would have on the Plaintiff's RFC or her ability to perform her past work or other jobs in the national economy," thus "substantial evidence cannot support the ALJ's decision without a clear explanation"), *report and recommendation adopted sub nom. Hester v. O'Malley*, No. 3:23-cv-51-ECM, 2024 WL 150499 (M.D. Ala. Jan. 12, 2024).

Here, the record is insufficient to determine whether the ALJ's rejection of Dr. Jones's recommended neck movement restrictions affected the administrative outcome. The RFC does not reflect any limitations on neck movements, nor does it contain any comparable or compatible limitations. Hence, there is no reason to conclude the RFC was consistent with Dr. Jones's limitations even though the RFC did not expressly adopt them. *See Klarner*, 2025 WL 1753548, at \*14 & n.19; *Amber H.*, 2025 WL 777710, at \*6 (finding harmless an ALJ's failure to mention a limitation in a nurse practitioner's disability evaluation where the RFC nevertheless contained restrictions consistent with that limitation). Further, because the ALJ did not ask the VE an alternative hypothetical, it is unknown whether the VE's testimony would have differed if the RFC limited Plaintiff to flexing, extending, and rotating her neck only occasionally. *See Lowery*, 2024 WL 890133, at \*4 ("[W]e cannot assume that the VE would have answered in a similar manner had the ALJ instructed her to consider the added limitation of needing an emotional support dog nearby at work."). Neither is there any basis for determining whether any difference in the

17

VE's testimony would have altered the ultimate determination of Plaintiff's ability to perform jobs available in the national economy. *See Amber H*, 2025 WL 777710, at *5.

Consequently, the record is insufficient to allow a determination on whether the ALJ's error altered the proceeding's ultimate outcome. Therefore, the error is not harmless, and the Commissioner's decision is due to be reversed and remanded. *See Weidlich*, 2023 WL 8015753 (reversing and remanding an ALJ's decision because "the absence of a clear explanation renders the ALJ's RFC assessment unsupported by substantial evidence"); *Wheeler*, 2024 WL 4603298, at *4 ("If the ALJ fails to provide an explanation, we cannot determine whether substantial evidence supported the ALJ's decision and must remand for further proceedings." (citation modified)); *Watkins v. Dudek*, No. 24-20014-CIV, 2025 WL 2269850, at *5 (S.D. Fla. Mar. 25, 2025) (reversing and remanding an ALJ's opinion because the ALJ did not explain why she adopted a restriction in a medical opinion).

## VI.   CONCLUSION

For the reasons stated, the Court finds the Commissioner failed to adequately state the grounds for the disability determination as required by the relevant legal standard. Therefore, it is ORDERED as follows:

1.   Plaintiff's motion for summary judgment (Doc. No. 11) is GRANTED,

2.   The Commissioner's motion for summary judgment (Doc. No. 21) is DENIED,

3.   The Commissioner's decision is REVERSED,

4.   This matter is REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

18

A separate judgment will issue.

DONE this 29th day of July, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE